JOURNAL ENTRY and OPINION
{¶ 1} Appellant Terrance Wallace appeals his conviction rendered after a bench trial in the Cuyahoga County Common Pleas Court. On appeal, he assigns the following errors for our review:
"I. The State failed to provide sufficient evidence to sustain appellant's conviction."
"II. The trial court erred in violation of the Sixth and Fourteenth
Amendments to the United States Constitution, and Article I, Section 10
of the Ohio Constitution which provide rights to confrontation and cross-examination, and evidence rules 801 and 802, when it permitted a State Witness to testify with inadmissable hearsay statements."
"III. The trial court erred in violation of the Sixth and Fourteenth
Amendments to the United States Constitution, and Article I, Section 10
of the Ohio Constitution which provide rights to confrontation and cross-examination, and evidence rules 801 and 802, when it permitted a State Witness to testify with inadmissable hearsay statements."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} On February 27, 2004, the Cuyahoga County Grand Jury indicted Wallace with two counts of drug trafficking, one count of drug possession, and one count of possession of criminal tools. Thereafter, Wallace pled not guilty at his arraignment. He subsequently waived his right to a jury trial; on September 3, 2004, a bench trial commenced.
 BENCH TRIAL {¶ 4} At trial, Detective Scott Moran of the Cleveland Police Department, testified that on January 28, 2004, he was a member of the surveillance team involved in a controlled buy operation. The operation was conducted in conjunction with members of the Drug Enforcement agency (DEA), utilizing a Confidential Reliable Informant (CRI).
 {¶ 5} Detective Moran testified that in anticipation of the controlled buy operation, members of the team met with the CRI. The CRI told the officers that he could purchase crack cocaine from a known individual. The CRI also told them the transaction would occur at West 117th and Dale Avenue in Cleveland. Based on this information, Detective Moran was assigned the job of maintaining surveillance on the CRI's vehicle and to inform the other members of the team when the target vehicle arrived.
 {¶ 6} Detective Moran testified that he and his partner, Detective Dullar, proceeded to the target location in an undercover vehicle and waited for the CRI to arrive. Once the CRI parked his car, Detectives Moran and Dullar parked two car lengths away from the CRI's car. Detective Moran testified that from this vantage point, he and his partner had an unobstructed view of the CRI's car and surroundings, which they maintained constant surveillance.
 {¶ 7} Detective Moran testified that at approximately 8:40 P.M., the other members of the team notified him that the suspect would be approaching momentarily. Detective Moran then observed a dark colored Oldsmobile Cutlass automobile turn from West 117th Street and head east on Dale Avenue. Detective Moran observed that the car was only occupied by the driver. As the suspect's vehicle passed Detectives Moran and Dullar, the driver turned around in a driveway, and proceeded to drive west on Dale Avenue. The suspect pulled alongside the CRI's vehicle. From this position, Detective Moran could only see the back of the suspect's head. Detective Moran then observed the suspect stick his hand out the window. The CRI also stuck his hand out the window, and an exchange occurred. The suspect vehicle then drove westbound on Dale Avenue.
 {¶ 8} Detective Moran obtained a prearranged signal from the CRI, via wire, that the drug transaction was complete. Detective Moran immediately broadcasted the description of the vehicle and the license plate to the assisting units. Detective Moran monitored the radio to ascertain whether the suspect was apprehended. Within fifteen to twenty seconds, Detective Moran received confirmation that the suspect was apprehended.
 {¶ 9} Detective John Pitts of the Cleveland Police Department testified that his department had collaborated with the DEA on a federal drug conspiracy investigation. As a result of this investigation, the DEA notified his department that they had a CRI who stated he could buy drugs in the department's jurisdiction. Consequently, on January 28, 2004, Detective Pitts, along with several members of the vice unit, met with the DEA and the CRI to execute a controlled buy.
 {¶ 10} Detective Pitts testified that prior to the controlled buy, the officers searched the CRI and his vehicle for any evidence of drugs. No evidence of drugs or any other contraband was found. He then provided the CRI with $450, which he had previously photocopied, to facilitate the transaction. Moments later, the CRI received a page from the drug dealer. The CRI returned the call using a cell phone and Detective Pitts recorded the number that the CRI dialed. Detective Pitts then learned that the drug transaction would occur at West 117th Street and Dale Avenue.
 {¶ 11} Thereafter, Detective Pitts, other members of the vice unit, and the DEA task force drove to the target location. Surveillance was set up around the CRI's vehicle. Detectives Moran and Dullar were in a van parked closest to the CRI's vehicle, while Detective Pitts was in an undercover vehicle with two DEA agents, parked about six houses to the east of the surveillance van.
 {¶ 12} A short while later, Detective Pitts observed an older blue Oldsmobile Cutlass automobile parked on Dale Avenue abreast of the CRI's vehicle. The cars were parked with their driver's doors facing each other. Moments later, the suspect vehicle pulled away, and traveled westbound on Dale Avenue. Detective Pitts immediately pulled behind the suspect vehicle.
 {¶ 13} When the suspect vehicle reached the intersection of West 117th Street and Dale Avenue, several police cruisers blocked it. Members of the vice squad and DEA agents approached the vehicle and removed the suspect from the vehicle. The suspect was later identified as Terrance Wallace. Detective Pitts saw money scattered on the front passenger seat of the suspect's vehicle. Detective Pitts compared the serial numbers on the bills with the photocopy of the money he had issued earlier to the CRI, and the serial numbers matched.
 {¶ 14} After securing Wallace, Detective Pitts, along with members of the DEA task force, met with the CRI, who gave them a quantity of suspected crack cocaine. The suspected crack cocaine was in the form of two large pieces, packaged in two separate bags. Detective Pitts submitted the suspected crack cocaine to the Cleveland Police Department's SIU lab for analysis. The substance tested positive for crack cocaine and weighed approximately 11.36 grams.
 {¶ 15} At the conclusion of the trial, the court found Wallace guilty of all counts, and proceeded to sentence him. The trial court found that counts one and two merged for purposes of sentencing. The trial court then imposed a prison term of three years on counts one, two and three, and eleven months on count four. The terms were to be served concurrently. Wallace now appeals.
 SUFFICIENCY OF EVIDENCE {¶ 16} In his first assigned error, Wallace argues that the State failed to present legally sufficient evidence to support his conviction. We disagree.
 {¶ 17} A challenge to the sufficiency of evidence supporting a conviction requires the appellate court to determine whether the State met its burden of production at trial.[1] On review for legal sufficiency, the appellate court's function is to examine evidence admitted at trial and determine whether such evidence, if believed, would convince the average person of the defendant's guilt beyond a reasonable doubt.[2] In making its determination, an appellate court must view the evidence in a light most favorable to the prosecution.[3]
 {¶ 18} Wallace claims the State failed to produce evidence of trafficking in drugs, possession of drugs, or possession of criminal tools, and more importantly failed to produce the CRI, who was the only person able to positively identify him. Wallace essentially argues the evidence was insufficient to convict him because it was circumstantial. We are unpersuaded.
 {¶ 19} It is a basic principle of law that the prosecution has the burden of proving a defendant's guilt beyond a reasonable doubt. The United States Supreme Court has held that the Due Process Clause of theFourteenth Amendment to the United States Constitution protects a defendant in a criminal case against a conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.[4]
 {¶ 20} It is also an elementary principle of law that when reviewing a criminal conviction, this court's examination of the record at trial is limited to a determination of whether there was evidence presented, which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. Our review is thus confined to a determination of whether there was substantial evidence.[5]
 {¶ 21} It is also now well established that circumstantial evidence and direct evidence inherently possess the same probative value.[6] In some instances certain facts can only be established by circumstantial evidence. Since circumstantial evidence and direct evidence are indistinguishable so far as the fact-finding function is concerned, all that is required of the fact-finder is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt. Nothing more should be required of a fact-finder.[7]
 {¶ 22} Here, the circumstantial evidence was overwhelming that Wallace possessed and sold the drugs recovered from the CRI. The trial court weighed the following evidence and found Wallace guilty beyond a reasonable doubt. First, Detective Moran testified that he was parked approximately two car lengths behind the CRI's car, from which position he had an unobstructed view. He observed an Oldsmobile Cutlass automobile, with only one occupant, pull alongside the CRI's car. He later observed a hand-to-hand exchange between the individual in the vehicle and the CRI, after which, the individual immediately drove off. After obtaining a prearranged signal from the CRI, Detective Moran immediately radioed the description of the suspect's vehicle and its license plate to the other members of the operation, who were waiting nearby. Wallace was apprehended within seconds.
 {¶ 23} Second, the trial court considered that Detective Pitts testified he searched the CRI's person and vehicle prior to the controlled buy; he gave the CRI $450 in buy money, which he photocopied beforehand; the serial numbers on the money recovered from Wallace matched the serial numbers of the money he had previously photocopied; and, Detective Pitts retrieved two large rocks of crack cocaine from Wallace within seconds after Wallace left the CRI.
 {¶ 24} Our independent review of the record before us indicates Wallace's conviction was supported by reliable, substantial and probative evidence. Accordingly, we overrule Wallace's first assigned error.
 RIGHT TO CONFRONT CONFIDENTIAL INFORMANT {¶ 25} In the second and third assigned errors, Wallace argues the trial court violated his right to confront and cross-examine a witness, when it allowed the State's witnesses to testify to matters which amounted to hearsay, instead of disclosing the identity of the CRI. We disagree.
 {¶ 26} In Roviaro v. United States,[8] the Supreme Court refused to adopt a fixed rule regarding disclosure and instead noted:
"The question calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."[9]
 {¶ 27} Moreover, the defendant bears the burden of establishing the need for disclosure.[10] The identity of an informant must be revealed when the testimony of the informant is vital to establishing an element of the crime or would be helpful or beneficial to the accused in preparing or making a defense to criminal charges.[11]
 {¶ 28} Generally, when the degree of participation of the informant is such that the informant virtually becomes a State's witness, the balance swings in favor of requiring disclosure of the informant's identity.[12]
Conversely, where disclosure would not be helpful or beneficial to the accused, the identity of the informant need not be revealed.[13]
 {¶ 29} Finally, a trial court's decision concerning the disclosure of the identity of a confidential informant will not be reversed absent an abuse of discretion.[14] The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.[15]
 {¶ 30} In the case sub judice, the testimony of the informant is not vital to establishing any element of the crimes for which Wallace was charged. The informant participated in a controlled buy, which was observed by officers who had an unobstructed view of the transaction. As previously noted, Detective Moran's van was situated approximately two car lengths behind the informant's vehicle, and from this vantage point he was able to observe the controlled buy. Additionally, Wallace was apprehended within seconds after the transaction was completed, with the buy money in his possession. Further, the officers retrieved crack cocaine from the informant whom they had searched prior to the transaction, and had found no contraband on his person or in his vehicle. Thus, with the overwhelming evidence against Wallace, by virtue of how the controlled buy transpired, the informant's testimony would not be vital to establishing any element of the crimes.
 {¶ 31} Moreover, testimony of the informant would not be helpful or beneficial to Wallace in preparing or making a defense to the criminal charges. There is no testimony on the part of the informant that could exculpate Wallace of these charges. The CRI could only testify to his participation in the controlled buy, which the police officers observed.
 {¶ 32} Nevertheless, in support of the instant assigned errors, Wallace cites Crawford v. Washington,[16] which holds that statements which are testimonial in nature, be subject to cross-examination. However, it is clear from the record before us that the trial court was cognizant of the need to disregard any improper testimony. The trial court granted Wallace's pre-trial motion to eliminate any statements prohibited by Crawford.[17] Thus, we presume that the trial court considered only relevant and reliable evidence.
 {¶ 33} Based on the foregoing, we conclude that Wallace did not demonstrate the necessity of revealing the CRI's identity, and, as such, the trial court did not abuse its discretion in not requiring the State to disclose the identity of the confidential reliable informant. Accordingly, we overrule Wallace's second and third errors.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Gallagher, J., and Rocco, J., concur.
[1] State v. Thompkins (1997), 78 Ohio St.3d 380.
[2] Id.; State v. Fryer (1993), 90 Ohio App.3d 37.
[3] Id. at 43.
[4] In re Winship (1970), 397 U.S. 358, 364, 90 S.Ct. 1068, 1073,25 L.Ed.2d 368, 375.
[5] State v. Eley (1978), 56 Ohio St.2d 169, 172.
[6] State v. Jenks (1991), 61 Ohio St.3d 259.
[7] See State v. Derouchie (1981), 140 Vt. 437, 444-445, 440 A.2d 146,149; State v. Gosby (1975), 85 Wash.2d 758, 539 P.2d 680, and State v.Roddy (R.I. 1979), 401 A.2d 23.
[8] (1957), 353 U.S. 53, 1 L.Ed.2d 639, 77 S.Ct. 623.
[9] Id. at 62.
[10] State v. Brown (1992), 64 Ohio St.3d 649, 653.
[11] State v. Williams (1983), 4 Ohio St.3d 74, syllabus; State v.Parsons (1989), 64 Ohio App.3d 63, 69.
[12] Williams, supra.
[13] State v. Williams, 4 Ohio St.3d at 76.
[14] State v. Feltner (1993), 87 Ohio App.3d 279, 282.
[15] Blakemore v. Blakemore (1983) 5 Ohio St.3d 217, 219.
[16] (2004), 124 S.Ct. 1354.
[17] Tr. at 6.