{¶ 1} Defendant-appellant, Trini Bolling ("appellant"), appeals the trial court's denial of his motion to suppress evidence as well as his conviction for drug trafficking. For the reasons set forth below, we affirm.
 {¶ 2} On August 8, 2006, the Cuyahoga County Grand Jury indicted appellant on one count of possession of cocaine, in violation of R.C.2925.11, and one count of drug trafficking, in violation of R.C.2925.03. Appellant pled not guilty to the indictment.
 {¶ 3} On September 21, 2006, appellant filed a motion to suppress evidence based upon a lack of reasonable suspicion for the investigative stop and search, and lack of probable cause to arrest.
 {¶ 4} The trial of this matter commenced on April 2, 2007. Prior to jury selection, the trial court heard testimony and arguments regarding appellant's motion to suppress. During the hearing, the trial court heard the testimony of Officer Randy Ramsey, Officer William Higginbotham, and Dannell Brady.[1] Based upon the evidence presented during this hearing, the trial court denied appellant's motion to suppress.
 {¶ 5} The case then proceeded to trial. The state presented the following individuals with the Cuyahoga Metropolitan Housing Authority ("CMHA") Police Department for examination: Officer Randy Ramsey, Officer William Higginbotham, *Page 3 
Sergeant Christopher Svec, and Detective Steve Kuska. Additionally, the state presented the testimony of Tina Stewart, scientific examiner for the Cleveland Police Department. Their testimony revealed the following pertinent facts.
 {¶ 6} On May 22, 2006, Officer Ramsey was driving on East 55th Street when he observed a 1992 Dodge Dynasty parked in the Carver Estates parking lot. Ramsey explained that he was alerted to the vehicle because the lot was not open to the residents as it was under renovation, and there were no other vehicles in the vicinity. Additionally, he noticed a person in the front passenger seat smoking what appeared to be a marijuana cigarette. Finally, he noted that it was a high-crime area. At that time, Officer Ramsey telephoned for backup assistance.
 {¶ 7} When he received confirmation of the arrival of backup, he approached the vehicle from an entrance on East 55th
Street, while Officer Higginbotham approached via an entrance identified as the Unwin extension. As Officer Ramsey approached, the driver of the Dodge quickly sped off to the exit. Officer Ramsey activated his overhead lights and blocked the vehicle from exiting.
 {¶ 8} Thereafter, Officer Ramsey decided to stop the vehicle and investigate. Upon approaching the vehicle, Officer Ramsey directed the individuals in the car, later determined to be Wan Cowan, the driver, Dannell Brady in the passenger seat, and appellant in the back seat, to show their hands for the officers' safety.
 {¶ 9} Subsequently, Officer Ramsey determined that the passenger was not smoking marijuana. However, he noticed appellant appeared nervous and was *Page 4 
making furtive movements in the back seat. More specifically, he repeatedly went into his jacket pocket. Accordingly, for their own safety, Officer Ramsey directed all individuals to exit the vehicle prior to requesting their identifications.
 {¶ 10} None of the three individuals in the vehicle possessed a driver's license or any form of identification. Thus, the officers verbally obtained identities from the occupants and awaited notification of possible outstanding warrants as well as verification of the identity of the individuals.
 {¶ 11} While waiting for this information, Officer Higginbotham testified that he determined that none of the occupants of the vehicle resided in Carver Estates, nor could they direct the officer to a reason for their presence in the parking lot. Additionally, while waiting, a broadcast from Sergeant Styles came over the radio to which appellant responded that, three weeks prior, he had been arrested for possessing drugs.
 {¶ 12} Officer Higginbotham testified that Cowan then became erratic. Accordingly, the officers inquired whether anyone had anything on their person. Appellant volunteered that he had drugs in his possession.
 {¶ 13} After he consented to a search, the police retrieved crack cocaine from the inside of his left coat pocket. More specifically, inside one large plastic bag was numerous rocks of crack cocaine as well as another plastic bag that contained loose powder of crack cocaine. In total, 13.85 grams of crack cocaine were retrieved from appellant's pocket. At that point, he was arrested. *Page 5 
 {¶ 14} Thereafter, Cowan was permitted to drive Brady from the scene and none of the individuals were issued citations for trespassing on CMHA property.
 {¶ 15} At the conclusion of the state's evidence, appellant moved for a Crim.R. 29(A) motion for acquittal, which the trial court denied. Appellant then presented the testimony of Dannell Brady.
 {¶ 16} Brady testified that she was the passenger in the vehicle on the evening in question. During her testimony, she disputed facts provided by Officers Ramsey and Higginbotham. More specifically, she testified that she informed the officers that she, appellant, and Cowan were parked in the parking lot in an attempt to obtain DVDs from appellant's friend who lived at Carver Estates. Additionally, Cowan was not attempting to flea the police when the vehicle was stopped. Rather, they were merely parked at a stop light exiting the parking lot after they were unsuccessful in contacting appellant's friend for the DVDs.
 {¶ 17} Additionally, her version of the events after the initial stop differ greatly from Officer Ramsey and Higginbotham's testimony. She testified that after she showed the officers the cigar she was smoking, the officers asked the occupants to exit the vehicle. Appellant and Cowan were then handcuffed and searched.
 {¶ 18} Next, the officers obtained the three individuals' names and social security numbers to check for any outstanding warrants. When the officers were informed there were none, the officers told appellant and Brady they were free to leave. The two did not leave, however, because the officers were still checking for *Page 6 
warrants for Cowan. Rather, the two returned to the vehicle and waited there for Cowan.
 {¶ 19} Soon thereafter, Officer Higginbotham retrieved appellant from the vehicle, made him remove his socks and shoes, handcuffed him, and searched him again. It was only then that the officers discovered the drugs. She maintained that she knew appellant did not have any drugs prior to this search because she personally searched appellant. She further testified that she never heard appellant inform the police he possessed drugs. Finally, Brady contradicted the officers testimony and maintained that numerous vehicles were present in the parking lot on that day.
 {¶ 20} At the conclusion of Brady's testimony, appellant rested his case and again moved for acquittal pursuant to Crim.R. 29(A). The trial court denied this request.
 {¶ 21} On April 4, 2007, the jury found appellant guilty of drug possession and drug trafficking as charged in counts one and two of the indictment. Soon thereafter, on April 11, 2007, the trial court sentenced appellant to two concurrent two-year prison sentences and three years post release control.
 {¶ 22} Appellant now appeals and asserts two assignments of error for our review. Appellant's first assignment of error states:
 {¶ 23} "The court erred in overruling defendant's motion to suppress evidence."
 {¶ 24} Appellate review of a trial court's ruling on a motion to suppress presents *Page 7 
mixed questions of law and fact. See State v. McNamara (1997),124 Ohio App.3d 706, 710, 707 N.E.2d 539. An appellate court is to accept the trial court's factual findings unless they are "clearly erroneous."State v. Long (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1. We are therefore required to accept the factual determinations of a trial court if they are supported by competent and credible evidence. State v.Harris (1994), 98 Ohio App.3d 543, 546, 649 N.E.2d 7.
 {¶ 25} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. Katz v. United States (1967),389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. These protections are applicable to the states via the Fourteenth Amendment, Mapp v. Ohio
(1961), 367 U.S. 643, 650, 81 S.Ct. 1684, 6 L.Ed.2d 1081; Ker v.California (1963), 374 U.S. 23, 30, 83 S.Ct. 1623, 10 L.Ed.2d 726, and by Section 14, Article I, of the Ohio Constitution which is virtually identical to the Fourth Amendment. See State v. Pierce (1998),125 Ohio App.3d 592, 596, 709 N.E.2d 203.
 {¶ 26} A common exception to the Fourth Amendment warrant requirement is an investigative stop, or Terry stop. Terry v. Ohio (1968),392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868. Under Terry, a law enforcement officer may briefly stop and detain an individual for investigative purposes, even without probable cause to act, if he has a reasonable suspicion that "criminal activity may be afoot." Id. at 30; accord United Statesv. Sokolow (1989), 490 U.S. 1, 7, 104 L.Ed.2d 1, 109 S.Ct. 1581. To *Page 8 
justify his suspicion as reasonable, the officer "must be able point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion."Terry, supra at 21.
 {¶ 27} A court evaluating the validity of a Terry search must consider "the totality of the circumstances — the whole picture." United Statesv. Cortez (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621. The circumstances are also to be viewed objectively: "Would the facts available to the officer at the moment of the seizure or search `warrant a man of reasonable caution in the belief that the action taken was appropriate?'" Terry, supra at 21-22. In other words, the court must view the circumstances surrounding the stop "through the eyes of the reasonable and prudent police officer on the scene who must react to the events as they unfold." State v. Andrews (1991), 57 Ohio St.3d 86,87-88, 565 N.E.2d 1271.
 {¶ 28} We find that, under the circumstances, the officers had the requisite reasonable suspicion to stop the vehicle and investigate the situation. Officer Ramsey testified that he believed he witnessed Brady smoking a marijuana cigarette. Additionally, he noticed that the vehicle was parked in a parking lot under renovation with no other cars in the vicinity. Additionally, Officer Ramsey noted that the vehicle was parked in a high crime area. Finally, upon approaching the parking lot, he witnessed the vehicle speed off in an attempt to avoid the police.
 {¶ 29} After viewing the totality of the circumstances, we find Officer Ramsey had a reasonable suspicion that the occupants of the vehicle were engaged in *Page 9 
criminal activity necessary in order to stop and investigate the situation. Officer Ramsey testified as to specific and articulable facts upon which he based his reasonable suspicion. Further, we are guided to view these facts through the eyes of the reasonable and prudent police officer on the scene. Based on his observations, Officer Ramsey was justified in his decision to stop and investigate the vehicle.
 {¶ 30} As we have determined that the stop was justified, we next examine appellant's argument that, after the initial stop, further detention of appellant violated his Fourth Amendment rights. Appellant maintains that, once Officer Ramsey discovered that Brady was not smoking a marijuana cigarette, the officers were no longer permitted to detain the occupants of the vehicle. We disagree.
 {¶ 31} Initially, we note that an officer may expand the scope of a stop and conduct a more in-depth investigation of an individual if the officer possesses a reasonable suspicion, based upon articulable facts, that the individual is engaged in criminal activity. State v.Guckert, Washington App. No. 99CA49, 2000-Ohio-1958.
 {¶ 32} After Officer Ramsey determined that Brady was not smoking marijuana, he still had reasonable suspicion of criminal activity to investigate the situation. As he testified, the vehicle was parked in a high crime area and in an empty parking lot that was under renovation. Additionally, the driver, Cowan, seemed nervous and appellant repeatedly made furtive movements towards his jacket pocket. None of the occupants had a driver's license or any form of identification. Also, the occupants were unable to provide a reason for their presence in the parking lot. Furthermore, *Page 10 
appellant informed the officers he had been arrested three weeks prior for a drug related activity. Finally, appellant volunteered that drugs were in his pocket. Officer Ramsey testified to specific, articulable facts that created further suspicion of criminal activity that warranted continued detention of the vehicle. Accordingly, the trial court properly denied appellant's motion to suppress. Appellant's first assignment of error is without merit.
 {¶ 33} His second assignment of error states:
 {¶ 34} "The state failed to produce sufficient evidence that the defendant was trafficking in drugs."
 {¶ 35} When reviewing a challenge to the sufficiency of the evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime, proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus, citing Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Thus, a reviewing court will not overturn a conviction for insufficiency of "the evidence unless we find that reasonable minds could not reach the conclusion reached by the trier of fact." State v. Treesh, 90 Ohio St.3d 460, 484, 2001-Ohio-4,739 N.E.2d 749.
 {¶ 36} Within this assignment of error, appellant argues that there was insufficient evidence to support his conviction for drug trafficking. He does not dispute his conviction for drug possession. The relevant portion of R.C. 2925.03(A) *Page 11 
defines drug trafficking as follows:
 {¶ 37} "(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."
 {¶ 38} We find the state presented sufficient evidence establishing appellant prepared the crack cocaine for shipment. First, the large amount of crack cocaine, nearly 14 grams, on appellant's person is inconsistent with personal use. See State v. Peyton, Cuyahoga App. Nos. 86795 86796, 2006-Ohio-3735. Additionally, police did not find any paraphernalia used to smoke the substance on appellant's person or the other occupants of the vehicle, which also indicates that the drugs were not for personal use. See State v. Jackson (Aug. 4, 1994), Cuyahoga App. No. 65957. Also, the drugs were separated in two plastic bags indicating preparation for sale. Furthermore, appellant was apprehended in an empty parking lot which was located in a high crime area and was unable to provide a purpose for his presence. It is well-established that the crime of drug trafficking may be established by circumstantial evidence.State v. Wallace, Cuyahoga App. No. 85541, 2005-Ohio-4397. Accordingly, viewing the foregoing evidence in a light most favorable to the state, we find sufficient evidence existed supporting appellant's conviction for drug trafficking. His second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, P.J., CONCURS MARY J. BOYLE, J., CONCURS IN JUDGMENT ONLY
[1] The relevant testimony at this hearing is later discussed herein. *Page 1