[Cite as *State v. Johnson*, 2018-Ohio-165.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
### No. 105505

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DONTEZ D. JOHNSON

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-607270-A

**BEFORE:** Kilbane, P.J., S. Gallagher, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** January 18, 2018

**ATTORNEY FOR APPELLANT**

Allison S. Breneman
1220 West 6th Street, Suite 303
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

Adam M. Chaloupka
Amy Venesile
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

MARY EILEEN KILBANE, P.J.:

**{¶1}** Defendant-appellant, Dontez D. Johnson ("Johnson"), appeals from his conviction and sentence for drug trafficking, drug possession, and possessing criminal tools. For the reasons set forth below, we affirm.

**{¶2}** In July 2016, Johnson was charged in an 18-count indictment related to two controlled buys of heroin and crack cocaine conducted by Cleveland police in June 2016. Johnson was indicted with eleven counts of trafficking, six counts of drug possession, and one count of possessing criminal tools.

**{¶3}** In February 2017, this matter proceeded to a jury trial. The following evidence was adduced at trial. The first buy occurred on June 13, 2016. Cleveland Police Detective Thomas Klamert ("Detective Klamert") testified that he and his colleagues from the Cleveland Police Department narcotics unit met with a confidential reliable informant ("CRI") as part of his investigation of Johnson. Detective Klamert explained that his investigation began with the purpose of targeting a heroin dealer known as "Juice" and "D-Red," who he later determined to be Johnson.

**{¶4}** Cleveland Police Detective Scott Moran ("Detective Moran") explained that a confidential reliable informant is an individual who has previously worked with and provided reliable information to the detectives in the past. At Detective Klamert's direction, the CRI called Johnson to arrange to meet him. Detective Klamert drove the informant to the area of West 105th Street and Governor Avenue to meet Johnson and

then gave the informant $80 of "buy money" after carefully searching the informant for drugs or other contraband.

{¶5} Cleveland Police Detectives John Dlugolinski ("Detective Dlugolinski") and Moran maintained surveillance on the CRI during the buy. The CRI entered a white Ford Taurus for a short period of time then exited the vehicle. Detective Klamert testified that he again searched the CRI after the buy was conducted. Detective Klamert retrieved heroin and crack cocaine from the CRI and further testified that the CRI no longer had the buy money on him. Detectives Dlugolinski and Moran followed the Ford Taurus and observed that Johnson was a passenger in the vehicle. The detectives terminated the surveillance and relayed this information to Detective Klamert to assist in his investigation.

{¶6} A few days later, on June 15, 2016, Detective Klamert met with a different CRI with the plan of conducting a "buy-bust" operation to apprehend Johnson. The second CRI made a controlled phone call to Johnson to set up the drug deal. Detective Klamert then took the second CRI to the area of West 43rd Street and Robert Avenue where Johnson had told the CRI to meet him. Detective Klamert carefully searched the second CRI and then gave him $100 in photocopied "buy money."

{¶7} Detective Dlugolinski had set up surveillance outside of the house where Johnson told the CRI to meet him. Detective Dlugolinski testified that Johnson met the CRI on the porch, then Johnson and the CRI went inside the house together. He

explained that a short time later, the CRI left the house and returned to Detective Klamert's undercover vehicle.

{¶8} Detective Klamert testified that CRI handed over heroin to him. He further testified that he searched the CRI, confirmed that the CRI no longer had the buy money, and advised his colleagues that the buy "was a good purchase." Detective Dlugolinski testified that approximately ten minutes later, Johnson, another man, and a woman got into a vehicle and drove away.

{¶9} Cleveland police followed the vehicle. Police stopped the vehicle. The officers ordered the occupants out of the vehicle. Detective Moran testified that as he approached the vehicle, he observed Johnson, who was sitting in the front passenger seat, reach behind his seat and place something in between the door and the rear passenger seat.

{¶10} Johnson was subsequently arrested then searched. Johnson had $236 cash on him, $100 of which included the photocopied buy money. Johnson also had mannitol and wax paper bags on him at the time of his arrest. Detective Moran testified that, from his experience and training as a narcotics officer, mannitol, a baby laxative, is commonly used by dealers as an additive to cut heroin. He further testified that, from his experience, the wax bags found on Johnson are commonly used to package heroin.

{¶11} Detective Moran searched the vehicle and found plastic bags containing heroin and crack cocaine behind the passenger seat and three cell phones on the floor of the front passenger seat. At police headquarters, Detective Klamert called the number

that he had both CRIs call to arrange the drug buys with Johnson. That number rang one of the cell phones recovered from the vehicle.

{¶12} At the conclusion of the state's evidence, the defense moved under Crim.R. 29 for acquittal on each count of trafficking and drug possession. The trial court denied this motion.

{¶13} The jury found Johnson guilty of nine counts of trafficking, four counts of drug possession, and one count of possessing criminal tools. After the jury announced its verdict, the trial court proceeded directly to sentence Johnson. The court imposed an eight-and-a-half-year prison sentence. It is from this order that Johnson now appeals, raising the following four assignments of error for our review:

### Assignment of Error One

The jury found, against the manifest weight of the evidence, that [Johnson] committed the acts charged in the indictment.

### Assignment of Error Two

The evidence was not legally sufficient to sustain a guilty verdict.

### Assignment of Error Three

The trial court allowed impermissible testimony in which was not proper under [Ohio Evid.R. 404(B)].

### Assignment of Error Four

The trial court abused its discretion by imposing a prison sentence contrary to R.C. 2929.14 and the purposes and principles of the felony sentencing guidelines and erred by imposing consecutive sentences.

**{¶14}** For ease of analysis, we will address these assignments of error out of order.

Sufficiency of the Evidence

**{¶15}** In the second assignment of error, Johnson argues that the state failed to present sufficient evidence to support his convictions for drug trafficking, drug possession, and possessing criminal tools.

**{¶16}** Our "function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.*

**{¶17}** Here, the jury found Johnson guilty of trafficking, in violation of both R.C. 2925.03(A)(1) and (A)(2), which provide in relevant part:

No person shall knowingly do any of the following:

(1) Sell or offer to sell a controlled substance[;]

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance * * * when the offender knows or has reasonable cause to believe that the controlled substance * * * is intended for sale or resale by the offender or another person.

**{¶18}** The jury also found Johnson guilty of drug possession, in violation of R.C. 2925.11(A), which provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." The jury further found Johnson

guilty of possessing criminal tools in violation of R.C. 2923.24(A), which provides that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." R.C. 2901.22(B) provides that one acts "knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist."

{¶19} Johnson argues that the evidence presented by the state was insufficient to support these convictions. Johnson points to the fact that none of the detectives testified to seeing him engage in a hand-to-hand drug transaction and that neither CRI testified at trial. He argues that "[t]he only evidence provided circumstantially shows that [Johnson] was in the vehicle during the first buy and in the home during the second" and that it was just as likely for another individual in the car or house to have sold drugs to the CRIs. We find this argument unpersuasive.

{¶20} This court has held:

It is * * * well established that circumstantial evidence and direct evidence inherently possess the same probative value. [*Jenks* at 272]. In some instances certain facts can only be established by circumstantial evidence. [*Id.*] Since circumstantial evidence and direct evidence are indistinguishable so far as the fact-finding function is concerned, all that is required of the fact-finder is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt. Nothing more should be required of a fact-finder.

*State v. Wallace*, 8th Dist. Cuyahoga No. 85541, 2005-Ohio-4397, ¶ 21.

**{¶21}** The state presented sufficient circumstantial evidence that Johnson possessed and sold the drugs recovered from both CRIs. The jury heard from Detective Klamert that he directed the first CRI to call Johnson to arrange to purchase drugs from Johnson. He further testified that he drove the CRI to meet with Johnson, searched the CRI for contraband and finding none, gave him the buy money. After the CRI returned to Detective Klamert's undercover vehicle, Detective Klamert searched the CRI again, retrieved heroin and crack cocaine from the CRI's person and found that the CRI no longer had the buy money. Detectives Moran and Dlugolinski testified that they observed Johnson in the passenger seat of the vehicle in which the first buy was conducted.

**{¶22}** As related to the second buy, Detective Klamert explained that he directed the second CRI to call and arrange to meet Johnson. Detective Klamert further explained that he searched the second CRI and gave him photocopied buy money. Detective Dlugolinski testified that Johnson met the CRI on the front porch of the house and that Johnson and the CRI went inside the house together. The CRI returned to Detective Klamert's vehicle and Detective Klamert confirmed the success of the buy to his colleagues. Prior to apprehending Johnson, Detective Dlugolinski observed Johnson reach toward the backseat as he approached the car in which Johnson was riding as a front seat passenger. Detective Moran testified that he recovered the buy money from Johnson's person and found narcotics and three cellphones near the area Johnson had been reaching toward.

**{¶23}** Although the record reflects that Johnson was not alone in the car or the house during each buy, we find that the state presented sufficient evidence that Johnson possessed and sold drugs to each informant. Detective Klamert testified that one of the three cell phones found on the floor of the front passenger seat, where Johnson had been sitting, rang when he called the number that each CRI called to arrange the buys. Moreover, the second CRI was met by Johnson on the porch outside.

**{¶24}** The state produced direct evidence through the testimony of Detective Moran that Johnson was in possession of criminal tools at the time of his arrest. Detective Moran testified that he recovered mannitol, wax paper bags, and $236 cash, including the photocopied buy money, from his search of Johnson after his arrest. Detective Moran explained that from his experience and training, mannitol is often used to cut heroin and the type of wax bags found on Johnson are commonly used to package heroin.

**{¶25}** Based on the foregoing, we find that the evidence presented at trial was sufficient to convict Johnson of each count of drug trafficking, drug possession, and possessing criminal tools. Accordingly, the second assignment of error is overruled.

<u>Manifest Weight</u>

**{¶26}** In the first, Johnson argues that his convictions are against the manifest weight of the evidence because of "the obvious lack of any real evidence proving [he] committed these acts."

**{¶27}** Unlike a review for sufficiency of the evidence, a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. *State v. Calhoun*, 8th Dist. Cuyahoga No. 105442, 2017-Ohio-8488, _ 41. Our review for the manifest weight of the evidence requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d172, 175, 485 N.E.2d 717 (1st. Dist. 1983). We note that reversal of a conviction on manifest weight grounds is reserved only for the exceptional case in which the evidence weighs heavily against the conviction. *Id*.

**{¶28}** In his manifest weight challenge, Johnson points to the fact that the detectives did not test the physical evidence for fingerprints or DNA. He also relies upon the fact that neither CRI testified at trial. We find that these arguments have no bearing on the evidence that was presented to the jury.

**{¶29}** Upon careful review of the entire record, we do not find that the jury, in weighing all the evidence, lost its way and created such a manifest miscarriage of justice that Johnson's convictions are against the manifest weight of the evidence. Accordingly, the first assignment of error is overruled.

Other Acts Evidence

**{¶30}** In the third assignment of error, Johnson argues that the trial court should have declared a mistrial after Detective Dlugolinski remarked that he had investigated and purchased drugs from Johnson prior to the controlled buys that were the subject of the indictment in the present matter.

**{¶31}** At trial, the state questioned Detective Dlugolinski:

THE STATE:   Are you personally familiar with an individual by the name of Dontez Johnson?

DETECTIVE DLUGOLINKSI:   Yes, I am.

THE STATE:   And, just briefly, how so?

DETECTIVE DLUGOLINKSI:   Prior to Detective Klamert having an investigation and informant into him, I had an informant into him made —

DEFENSE COUNSEL:   Objection

THE COURT:   Overruled.   Go ahead.

DETECTIVE DLUGOLINKSI:   I made several buys from him trying to pinpoint a location where his stash house was.

DEFENSE COUNSEL:   Objection.   Move to strike.

THE COURT:   Overruled.

DETECTIVE DLUGOLINKSI:   In an effort to protect informant's identity and also just to execute a county search warrant to get all of his drugs instead of just what he carried on his person at the time of the numerous amount of sales we made on a purchase from him.

DEFENSE COUNSEL:   Objection.   Can we have a sidebar, please, Judge?

**{¶32}** At sidebar, defense counsel argued that Detective Dlugolinski's testimony was a violation of Evid.R. 404(B). The trial court offered to give a curative instruction and instructed the jury as follows:

> Ladies and gentlemen of the jury, the Court read to you some indictments. This trial is only relating to those indictments. The only actions you should be concerned with as they pertain to the defendant are the actions around those two dates. Any inferences or references to these detectives knowing the defendant or having any previous involvement with the defendant should not be considered for your deliberations, and you must strike it from your mind as best you can and not consider it for any purpose during your deliberations.

**{¶33}** Johnson argues that Detective Dlugolinski's comments violated Evid.R. 404(B) and "unduly prejudiced [him] and caused irreparable harm."

**{¶34}** We review trial court decisions regarding admissibility of other-acts evidence for an abuse of discretion. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 22. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶35}** Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Generally, evidence of previous criminal acts that are wholly independent of the criminal offense for which a defendant is on trial, is inadmissible. *State v. Thompson*, 66 Ohio St.2d 496, 497, 422 N.E.2d 855 (1981).

**{¶36}** Here, the trial court erred in initially overruling defense counsel's objections to Detective Dlugolinski's comments regarding prior investigations of Johnson. However, we find this error was harmless and we note that the trial court instructed the jury to disregard these comments.

**{¶37}** This court has recognized that curative instructions, such as the one given by the trial court here, are an effective means of remedying errors that occur during trial. *State v. Fields*, 8th Dist. Cuyahoga No. 90154, 2008-Ohio-5867, ¶ 42, citing *State v. Zuern*, 32 Ohio St.3d 56, 61, 512 N.E.2d 585 (1987). Juries are presumed to follow any curative instructions given by a trial court. *Id*. This court has held that "curative instructions are the accepted means by which to cure remarks at trial, and in the absence of demonstrable prejudice, we cannot find that the court erred." *State v. Winston*, 8th Dist. Cuyahoga No. 81436, 2003-Ohio-653, ¶ 8.

**{¶38}** Johnson does not present any evidence to overcome the presumption that the jury followed the trial court's instruction nor has he demonstrated that Detective Dlugolinski's comments were so prejudicial that a mistrial was warranted. Ultimately, we do not find that these remarks were so inflammatory that the curative instruction given

here was insufficient or that mistrial was warranted. Accordingly, the third assignment of error is overruled.

## Consecutive Sentences

**{¶39}** In the fourth assignment of error, Johnson argues that the trial court's imposition of consecutive sentences in this matter was contrary to the felony sentencing guidelines and R.C. 2929.14.

**{¶40}** We review a trial court's imposition of consecutive sentences using the standard set forth in R.C. 2953.08. *State v. Wells*, 8th Dist. Cuyahoga Nos. 99305, 99306, and 99307, 2013-Ohio-3809, ¶ 11, citing *State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, ¶ 10. R.C. 2953.08(G)(2) provides two grounds for an appellate court to overturn the imposition of consecutive sentences: (1) the appellate court, upon its review, clearly and convincingly finds that "the record does not support the sentencing court's findings" under R.C. 2929.14(C)(4); or (2) the sentence is "otherwise contrary to law." *Id.* at ¶ 12.

**{¶41}** R.C. 2929.14(C)(4) requires a trial court to make three distinct findings when imposing consecutive sentences. *State v. Taylor*, 8th Dist. Cuyahoga No. 100315, 2014-Ohio-3134, ¶ 56. Specifically, the trial court must find that a consecutive sentence for multiple offenses is "necessary to protect the public from future crime or to punish the offender." It must also find that the consecutive sentences are "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the

public." Finally, the trial court must find that one of the three statutory factors set forth in R.C. 2929.14(C)(4)(a)–(c) apply. *Id.*

{¶42} In imposing consecutive sentences, "a trial court must state the required findings as part of the sentencing hearing * * * [a]nd because a court speaks through its journal * * * the court should also incorporate its statutory findings [under R.C. 2929.14(C)] into the sentencing entry." (Internal citations omitted.) *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 29. "[A] word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.*

{¶43} We find that the trial court made all of the findings required under R.C. 2929.14(C) by stating at the sentencing hearing:

> The court does order these sentences to be served consecutively and, therefore, makes the following findings. That consecutive sentences are necessary to protect the public from future crime. This court does find that the defendant has previously been convicted in 11 other drug cases, that he's previously been sentenced to prison, that he's previously violated some of his probations, and that he continues to engage in this wrongful conduct. The court finds that consecutive sentences are not disproportionate to the seriousness of the offender's conduct. The court further finds that consecutive sentences are not disproportionate to the danger the offender poses to the public. And the court finds that this defendant continues to engage in the same conduct where he is selling people heroin and cocaine, both of which speak for themselves as dangerous to our community. The court further finds that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender, and this court finds as a result of that

nothing seems to stop him and, therefore, he needs to be taken out of society.

The trial court also incorporated its consecutive sentence findings into its sentencing journal entry.

**{¶44}** Based on the foregoing, we find that the trial court made the required findings under R.C. 2929.14(C) to support the imposition of consecutive sentences. We also find that the record in this matter supports these findings. Accordingly, the fourth assignment of error is overruled.

**{¶45}** Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MARY EILEEN KILBANE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
PATRICIA ANN BLACKMON, J., CONCUR